Filed 3/22/24  P. v. Patterson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAMON PATTERSON,<br><br>    Defendant and Appellant. | G061630<br><br>(Super. Ct. No. 95HF0300)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazard and Anthony DaSilva, Deputy Attorneys General, for Plaintiff and Respondent.

Ramon Patterson appeals from a postjudgment order after the trial court summarily denied his petition for resentencing pursuant to Penal Code section 1172.6.[1] In 2000, a jury convicted Patterson of special circumstance first degree murder and attempted kidnapping. He argues the court erred by denying his resentencing petition because there was insufficient evidence that he acted with reckless indifference to human life. We disagree and affirm the postjudgment order.

## FACTS[2]

Patterson sold stolen computers. He sold Gregory Hebdon a computer through an intermediary. When Hebdon wanted to make additional purchases, the intermediary told him to talk to Patterson directly because she did not want to be involved.

A couple months later, one afternoon, E.C. was driving looking for a garage sale when she looked down an alley and saw three men. She saw two "dark" men trying to push a white man into a car's trunk. E.C. identified Patterson as the man holding the gun, but she only watched for a few seconds from 126 feet away. She honked her car horn and drove away—she heard gunshots and the sound of screeching tires. E.C. could not describe whether they had facial hair, whether they wore glasses, what they were wearing, or how tall they were. The only time E.C. saw either of their faces was when the car stopped and the driver got out of the car and closed the trunk.

---

[1] Effective June 30, 2022, the Legislature renumbered Penal Code section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) For purposes of clarity, we refer to the statute as section 1172.6 throughout the opinion. All further statutory references are to the Penal Code, unless otherwise indicated.

[2] On our own motion and for good cause, we take judicial notice of the record in case No. G028671. (Evid. Code, § 452, subd. (d).)

A neighbor, P.W., heard gunshots and saw Patterson "crouched" near the driver's side of Hebdon's vehicle. P.W. said Patterson had his hands together in front of his body. She heard additional gunshots and tires screeching.

Hebdon was found lying under his vehicle in the alley behind his home. There was a handcuff on his wrist. In his vehicle, officers found $3,400 cash and a pistol. Hebdon was shot six times and bled to death from his wounds. He also suffered lacerations on his head, which could have been caused by a blow from the gun.

Officers found Patterson's car later that day. Patterson's and Jerome Jones's fingerprints were found inside and outside the car; Hebdon's blood was found on the exterior of the car and in the trunk.

The first amended information charged Patterson and Jones with first degree murder with the special circumstance that it was committed during the commission of an attempted kidnapping (§§ 187, subd. (a), 190.2, subd. (a)(17)(ii)) and attempted kidnapping (§§ 664, 207, subd. (a)). It alleged they, as principals, were personally armed with a firearm. (§ 12022, subd. (a)(1).)

During their first trial, the trial court declared a mistrial as to Patterson. Jones's trial continued. The jury convicted Jones of first degree murder, found him not guilty of attempting kidnapping, and found the special circumstance allegation not true.[3]

At Patterson's second trial, the jury deadlocked. The trial court declared a mistrial.

At Patterson's third trial, after the prosecution offered the above evidence, Patterson testified he had known Jones since childhood and their friendship was interrupted by their respective prison sentences. He stated a friend introduced him to Hebdon and he worked for him briefly. Patterson had begun to traffic in stolen

---

[3]    Another panel of this court affirmed Jones's conviction. (*People v. Jones* (July 31, 2000, G024743) [nonpub. opn.].)

computers. He sold Hebdon some computer equipment. On another occasion, Patterson offered to sell him three computers and arranged for Hebdon to meet him near Patterson's house in Compton; they did not consummate the sale. Eventually, Hebdon told Patterson he would buy as many laptop computers as he could get.

The week of the killing, 25-year-old Patterson called Hebdon and told him he had five Toshiba laptop computers for sale. Patterson agreed to bring the computers to Hebdon's house. The morning of the killing, Patterson was at Jones's house and asked him to come "for some company." Patterson thought Jones had been smoking PCP because he saw "Sherm" butts in the ashtray and "he had the look." Patterson knew Jones carried a gun and saw him put it in his waistband before they went to meet Hebdon. When asked, Patterson agreed he "knew in general it wasn't a good thing" that Jones had a gun. Patterson stated he did not kill Hebdon and did not want anything bad to happen to him. He did not know Jones was going to hurt or kill him.

Patterson and Jones met Hebdon in the alley behind Hebdon's house. Patterson parked his car facing the dead end. Hebdon had his briefcase handcuffed to his wrist. Patterson showed Hebdon the computers in his trunk, but they began to argue about the price. Jones hit Hebdon over the head with a gun. Hebdon swung his briefcase at Jones. Jones began shooting. Patterson panicked. He jumped in his car and sped off, stopping briefly to pick up Jones, and again to close the trunk. Later, Patterson stopped the car so Jones could dispose of the gun in a storm drain. Patterson took off his bloody shirt and threw it out the car window. Patterson abandoned his car that night and hid at a friend's house for two weeks. He fled to Seattle and with Jones's help, assumed a false identity and remained there until he was caught.

During closing argument, the prosecutor acknowledged that some evidence pointed to Patterson as the shooter and some evidence to Jones. He stated though, "[I]t doesn't matter in this case, folks, because both at the very least were aiders and abettors,

aiders and abettors to a felony murder kidnapping or aiders and abettors to a premeditated and deliberate murder."

The jury convicted Patterson of special circumstance first degree murder and attempted kidnapping. The jury found true Patterson was armed with a firearm within the meaning of section 12022, subd. (a)(1). The trial court sentenced Patterson to prison for life without the possibility of parole. We affirmed. (*People v. Patterson* (May 24, 2002, G028671) [nonpub. opn.].)

Twenty years later, Patterson filed a petition for resentencing pursuant to section 1172.6; the trial court appointed counsel. The prosecutor filed a response. Patterson retained counsel. At a hearing, the court concluded Patterson made a prima facie showing and issued an order to show cause.

Patterson filed a memorandum of points and authorities. The prosecution filed a brief.

Patterson filed a reply that sought admission of evidence of Jones's prior bad acts (Evid. Code, § 1101, subd. (b)). Patterson sought to admit evidence that five months before Hebdon's murder, Jones committed two counts of aggravated murder (rape and robbery) in Washington. Both victims suffered multiple gunshots and blunt force trauma to the head.

At a hearing, the trial court stated it had reviewed the evidence and written submissions. After hearing argument, the court explained that although it was not convinced beyond a reasonable doubt Patterson was the shooter, the court was convinced Patterson was a major participant in the attempted kidnapping and acted with reckless indifference to human life. The court denied Patterson's petition for resentencing.

DISCUSSION

It need not be repeated that the Legislature made changes to California's murder law in recent years. Suffice it to say, "[u]nder the amended felony-murder rule, a defendant who was not the actual killer and did not act with the intent to kill can only be

5

liable for murder if []he was a major participant in the underlying felony and acted with reckless indifference to human life. [Citations.] '[T]he standard under section 189, subdivision (e)(3) for holding . . . a defendant liable for felony murder is the same as the standard for finding a special circumstance under section 190.2[, subdivision] (d), as the former provision expressly incorporates the latter.' [Citation.] Accordingly, death penalty cases interpreting section 190.2, subdivision (d), including *People v. Banks* (2015) 61 Cal.4th 788 . . . and *People v. Clark* (2016) 63 Cal.4th 522 . . . , are controlling here." (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123 (*Guiffreda*).)

"We review the trial court's factual findings for substantial evidence. [Citation.] 'Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citation.] We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. [Citation.] We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'The same standard applies when the conviction rests primarily on circumstantial evidence.' [Citation.] 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' [Citation.]" (*Guiffreda, supra*, 87 Cal.App.5th at p. 125.)

*I. Major Participant in the Underlying Felony—Actus Reus Requirement (Guilty Act)*

In *People v. Banks, supra*, 61 Cal.4th 788 (*Banks*), the court articulated the following factors to determine whether a defendant is a major participant in the underlying felony: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by

6

the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Id.* at p. 803, fn. omitted.)

Here, neither below nor on appeal, does Patterson argue there was insufficient evidence he was a major participant in the underlying felony, the attempted kidnapping.  Indeed, E.C. testified Patterson and Jones tried to push Hebdon into the trunk.  The jury was persuaded by this evidence and convicted Patterson of attempted kidnapping.  Thus, we turn to whether there was sufficient evidence he acted with a reckless indifference to human life.

## II.  *Reckless Indifference to Human Life—Mens Rea Requirement (Guilty Mind)*

Reckless indifference to human life is "implicit in knowingly engaging in criminal activities known to carry a grave risk of death."  (*Tison v. Arizona* (1987) 481 U.S. 137, 157 (*Tison*).)  Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions."  (*People v. Clark, supra*, 63 Cal.4th at p. 617 (*Clark*).)

Reckless indifference to human life has a subjective and an objective element.  (*Clark, supra*, 63 Cal.4th at p. 617.)  "The subjective element is the defendant's conscious disregard of risks known to him or her."  (*Ibid*.)  The objective element is "'a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.'  [Citation.]"  (*Ibid*.)

In *Clark*, the court articulated the following factors to determine whether a defendant acted with a reckless disregard for human life:  "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to

7

restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*), citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

"'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' [Citation.]" (*Clark, supra*, 63 Cal.4th at p. 618 quoting *Banks, supra*, 61 Cal.4th at p. 803.) We analyze the totality of the circumstances to determine whether Patterson acted with reckless indifference to human life. (*Scoggins, supra*, 9 Cal.5th at pp. 677, 683 [fact intensive, individualized inquiry].)

Although courts state the actus reus and mens rea requirements separately, they significantly overlap. There are some felonies where one could properly conclude that any major participant necessarily exhibited reckless indifference to human life. *Banks, supra*, 61 Cal.4th at p. 810, fn. 9 [manufacture and placing of a live bomb likely qualifies but not armed robbery], discussing *Tison, supra,* 481 U.S. at p. 158, fn. 12.) But "even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding." (*Tison, supra*, 481 U.S. at p. 158, fn. 12.)

Here, the fact that Patterson was a major participant in the attempted kidnapping of Hebdon provides significant support for concluding he exhibited reckless indifference to human life. Again, there was eyewitness testimony Patterson tried to push Hebdon into the trunk. Patterson tries to sanitize his conduct but admits there was evidence "[he] struggled with Hebdon at the rear of the car next to the open trunk before the shooting."

With respect to the *Clark* factors, it is true "[t]he mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless

8

indifference to human life. [Citation.]" (*Clark, supra*, 63 Cal.4th at p. 618.) But it was not just that Patterson was aware Jones had a gun. Patterson admitted that when he asked the armed Jones to accompany him to meet Hebdon, he thought Jones was high on PCP. Evidence that Patterson knew Jones was armed and high on PCP supported the conclusion Patterson knowingly created a grave risk of death. (*Banks, supra*, 61 Cal.4th at p. 808 ["Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to establish reckless indifference to human life; "only knowingly creating a 'grave risk of death'" satisfies the statutory requirement]; see *People v. Montiel* (1993) 5 Cal.4th 877, 901 [evidence "PCP had unpredictable effects" and "can reduce impulse control, cause distorted perception, produce episodic partial amnesia, and exaggerate aggressive or violent tendencies"], disapproved on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.) Patterson took a man who had previously committed criminal conduct, had a gun, and was under the influence of a drug with unpredictable effects to sell stolen goods. That there was evidence of only one gun does not negate the fact that Patterson knowingly created a highly volatile situation. This factor weighs in favor of concluding Patterson exhibited reckless indifference to human life.

There is no dispute Patterson was present when Jones shot Hebdon. Indeed, Patterson does not dispute he was a major participant in the underlying felony, the kidnapping. Patterson's proximity to the murder weighs in favor of concluding he exhibited reckless indifference to human life.

Patterson also admits there was evidence he left without trying to restrain Jones or to help Hebdon. There is no evidence he tried to help Hebdon or defuse or disassociate himself from the situation. He did not render aid, call 911, or drive Hebdon to the hospital. Hebdon was not a stranger to Patterson—he had briefly worked for Hebdon and knew his wife. Yet Patterson left Hebdon to die in the alley. As Patterson drove away, he complied with Jones's demand to stop to discard the murder weapon, and

9

Patterson threw his shirt, covered in Hebdon's blood, out of the window. "A defendant's actions after the [offense] may also bear on the defendant's mental state. [Citation.]" (*Scoggins, supra*, 9 Cal.5th at p. 679.) This factor weighs in favor of concluding Patterson exhibited reckless indifference to human life.

The duration of the interaction between Patterson and Jones and Hebdon was brief. Courts have considered "whether a murder came at the end of a prolonged period of restraint of the victims by defendant" in analyzing the defendant's culpability. (*Clark, supra*, 63 Cal.4th at p. 620.) Because prolonged restraint of a victim provides "'a greater window of opportunity for violence' [citation], possibly culminating in murder," it can indicate the defendant exhibited reckless indifference to human life. (*Ibid*.) Here, there was no prolonged restraint. This factor does not weigh in favor of concluding Patterson exhibited reckless indifference to human life.

There is no evidence Patterson knew Jones had been charged with two counts of aggravated murder in Washington. Nevertheless, Patterson admitted he and Jones were childhood friends, they were very close, and he knew Jones had served prison time. This factor stands in relative equipoise.

The Attorney General states it was reasonable to infer Patterson planned the crimes and made no efforts to minimize the risks to Hebdon. It is true that Patterson did not tell Jones to not bring the gun. However, the record is void of any evidence of planning activity. There was evidence Patterson sold Hebdon stolen computers in the past and arranged to do it again. The record includes no evidence Patterson and Jones *planned* to kidnap Hebdon. In fact, the circumstances of the meeting belie the claim they planned to kidnap him. Unlike the previous deal where Patterson arranged for Hebdon to drive to him, Patterson agreed to drive to Hebdon. Patterson agreed to meet at Hebdon's house in Irvine in the middle of the afternoon, and Patterson could reasonably conclude Hebdon's wife was home. This factor stands in relative equipoise.

10

Patterson contends there was no substantial evidence he acted with reckless disregard for human life. He relies on the fact Jones had the only gun, he did not have the opportunity to stop Jones because the shooting happened quickly, the incident happened quickly, he did not know of Jones's propensity for lethal violence, he did not plan the attempted kidnapping, and he was relatively young and unable to appreciate the risks. But his contention is based on a cherry-picked reading of the facts that reflects only the parts of the record that most benefit him. We cannot reweigh the evidence and must accept all logical inferences and presume in support of the judgment the existence of every fact the trial court could reasonably deduce from the evidence. (*Guiffreda, supra*, 87 Cal.App.5th at p. 125.)

As to his age at the time of the offense, 25 years old, Patterson did not raise this in the trial court. Any error in the trial court failing to consider his age was harmless pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 488-489, fn. 8.) "Presumably, the presumption of immaturity weakens as a defendant approaches 26." (*Id.* at p. 489; § 1016.7, subd. (b) [youth "includes any person under 26 years of age on the date the offense was committed"].) Additionally, there is no evidence Patterson was impulsive or vulnerable to peer pressure from Jones. To the contrary, Patterson invited the armed and under the influence Jones to accompany him on his criminal enterprise. (*Oliver, supra*, 90 Cal.App.5th at p. 489.) Finally, Patterson has failed to present on appeal or in the court below any specific support for the proposition that his level of maturity somehow lessened his culpability for this murder.

In *Banks*, our high court explained the phrases "major participant" and "reckless indifference" are derived from *Tison, supra*, 481 U.S. 137, in which the United States Supreme Court built on its earlier decision in *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*), to examine the constitutional limits for imposing capital punishment on accomplices to felony murder. (*Banks, supra*, 61 Cal.4th at pp. 794, 800, 806.) *Tison*

11

and *Enmund* "collectively place conduct on a spectrum, with felony-murder participants eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions." (*Banks, supra,* 61 Cal.4th at p. 794.)

"Toward one end of the spectrum was the getaway driver the high court found constitutionally ineligible for death in *Enmund[, supra,]* 458 U.S. [at p.] 797-801: a '"minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state."' [Citation.] Toward the other end of the spectrum were the confederates found eligible for death in *Tison, supra*, 481 U.S. 137, who had broken convicted murderers out of jail, armed them, captured an innocent family, 'held [the family] at gunpoint while the two murderers deliberated whether the family should live or die, [and] then stood by while all four members were shot.' [Citation.]" (*People v. Strong* (2022) 13 Cal.5th 698, 705.)

Based on the totality of the circumstances, we conclude Patterson's conduct placed him more toward the *Tison* end of the continuum. The evidence established Patterson took an under the influence, unpredictable, and armed man on a criminal enterprise, participated in an attempted kidnapping, was present for the murder, did nothing to prevent the crime or aid the victim, and tried to cover up the murder. This evidence satisfied both the objective and subjective elements to demonstrate a reckless disregard for human life. Although Patterson's conduct was not as egregious as the confederates in *Tison*, it was more than the getaway driver in *Enmund*. Thus, sufficient evidence supported the trial court's determination that Patterson was a major participant in the attempted kidnapping and acted with reckless indifference to human life.

12

## DISPOSITION

The postjudgment order is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


GOETHALS, J.

13